## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Grisel A.,<br><br>                    Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of<br>Social Security,[1]<br><br>                    Defendant. | Civil No. 3:20-cv-00719-TOF<br><br><br><br>September 24, 2021 |

## <u>RULING ON PENDING MOTIONS</u>

The Plaintiff, Grisel A.,[2] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title II Disability Insurance Benefits ("DIB") benefits and Supplemental Security Income ("SSI") benefits under Title XVI. (Compl., ECF No. 1.)  She has moved the Court for an order reversing or remanding the Commissioner's decision.  (ECF No. 23.)  The Commissioner has moved for an order affirming that decision.  (ECF No. 26.)

The Plaintiff makes four principal arguments for reversal or remand.  (*See* discussion, Section I *infra*.)  First, she contends that the Administrative Law Judge ("ALJ") committed legal error in assigning "little weight" to opinion evidence from her treating physician's assistants, and

---

[1]      When the Plaintiff filed this action, she named the then-Commissioner of the Social Security Administration, Andrew Saul, as the defendant.  (Compl., ECF No. 1.)  Commissioner Saul no longer serves in that office.  His successor, Acting Commissioner Kilolo Kijakazi, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).  The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]      Pursuant to Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

"great weight" to the opinions of non-examining state agency consultants. (ECF No. 23-2 at 2-9.) Second, she asserts that the ALJ erred in his evaluation of her fibromyalgia. (*Id.* at 10-13.) Third, she argues that the ALJ erred in his assessment of her upper extremity impairments. (*Id.* at 13-19.) Fourth, she argues that the ALJ failed to consider all her documented impairments in determining that she had the residual functional capacity ("RFC") to perform light work with limitations, and she therefore says that the ALJ did not meet his burden at Step Five because his hypothetical to the vocational expert did not incorporate all of her limitations. (*Id.* at 19-22.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 3,135-page administrative record, the Court concludes that the ALJ committed no reversible legal error and that his decisions were supported by substantial evidence. Accordingly, the Plaintiff's Motion for Order (ECF No. 23) is **DENIED**, and the Commissioner's Motion for an Order Affirming the Decision is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2016, the Plaintiff filed applications for DIB under Title II and SSI benefits under Title XVI. (R. 23, 108.) She claimed that she could not work because of arthritis and fibromyalgia. (R. 93, 108.) She alleged a disability onset date of May 30, 2016.[3] (R. 94, 109.)

On January 3, 2017, the Social Security Administration ("SSA") found that the Plaintiff was "not disabled." (R. 92, 107.) The SSA again denied her claim on reconsideration on

---

[3]     The relevant period under review for Plaintiff's DIB benefits runs from May 30, 2016, her alleged onset date, through the date of the ALJ's decision, December 3, 2018.  20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989).  In contrast, with regard to her application for SSI benefits, the relevant period under review runs from September 26, 2016, the date she applied for benefits, through the date of the ALJ's decision, December 3, 2018.  20 C.F.R. §§ 416.330, 416.335; *see Frye v. Astrue,* 485 F. App'x. 484, 485 n.1 (2d Cir. 2012) (summary order).  The Plaintiff's date last insured for DIB benefits is December 31, 2021. (R. 26.)

September 19, 2017.  (R. 122, 137.)  The Plaintiff then requested a hearing before an ALJ, and on August 16, 2018, Judge John Noel held a hearing.  (R. 48-79.)  The Plaintiff's counsel, Meryl Anne Spat, appeared on her behalf.  (R. 48.)  The ALJ also heard testimony from a vocational expert ("VE"), Michael Dorval.  (R. 71-78.)

On December 3, 2018, the ALJ issued an unfavorable decision.  (R. 17-39.)  As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Noel's written decision followed that format.  At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date of May 30, 2016.  (R. 26.)  At Step Two, he found that the Plaintiff suffers from the severe impairments of osteoarthritis and allied disorders, fibromyalgia, diabetes mellitus, obesity, and peripheral neuropathy.  (*Id.*)  At Step Three, he concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1.  (*Id.*)  He then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequently climbing ramps and stairs.  The claimant is limited to never climbing ladders, ropes, or scaffolds.  The claimant is limited to frequently balancing and stooping.  She is limited to occasionally kneeling and crawling.  The claimant is limited to frequently crouching.  She is limited to frequent reaching overhead with the right upper extremity.  The claimant is limited to occasional exposure to the extreme heat, extreme cold or to vibration and she iss [*sic*] limited to frequent fingering with the left hand.

(R. 27.)  At Step Four, the ALJ found that the Plaintiff was capable of performing her past relevant work as a data entry clerk and assembler of electronic parts.  (R. 38.)  And although he found that the Plaintiff was still able to do some of her prior work, he nevertheless went on to Step Five; at that step, he relied on VE Dorval's testimony to conclude that the Plaintiff could also perform the

jobs of "laundry worker," "small parts assembler," and "inspector and hand packager." (R. 38-39.) In summary, he found that the Plaintiff had "not been under a disability, as defined in the Social Security Act, from May 30, 2016 through" December 3, 2018. (R. 39.)

On December 6, 2018, the Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 248.) During the appeals process, she submitted a brief letter dated June 6, 2019, from Nancy Rizza, a physician's assistant at the Arthritis Center of Connecticut. (R. 10.) The Appeals Council considered the letter (*see* discussion, Section III.A.2 *infra*), but observed that since it was written in 2019, it did "not affect the decision about whether you were disabled beginning on or before December 3, 2018." (R. 2.) The Council found no other "reason under our rules to review the [ALJ']s decision" and, therefore, denied the Plaintiff's request for review. (R. 1.) It added that if the Plaintiff wanted the SSA "to consider whether [she] was disabled after December 3, 2018," she would "need to apply again." (R. 2.) On the question of whether she was disabled before that date, however, the Commissioner's decision was "final." (R. 1.) If the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil action." (R. 2.)

The Plaintiff then filed this action on May 24, 2020. (Compl., ECF No. 1.) The Commissioner answered her complaint by filing the administrative record on October 21, 2020. (ECF No. 17; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) On January 21, 2021, the Plaintiff filed her motion for an order reversing or remanding the Commissioner's decision. (ECF No. 23.) On April 12, 2021, the Commissioner filed a motion for an order affirming his final decision. (ECF No. 26.) The Plaintiff did not file a reply brief, and her time for doing so has expired. (*See* ECF No. 4, at 4.) The parties' motions are therefore ripe for decision.

II.    **APPLICABLE LEGAL PRINCIPLES**

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).    To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).    At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments." *Id.*    At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.*    At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id.*  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*    The claimant bears the burden of proving her case at Steps One through Four. *Id.*    At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).    Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal

error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.   "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

In this case, the Plaintiff claims that the ALJ's decision was legally erroneous or unsupported by substantial evidence in four principal respects. (*See generally* ECF No. 23-2.) The Court will address each argument in turn.

## III.    DISCUSSION

### A.    Assignment of Weight to Opinion Evidence

The Plaintiff first claims that the ALJ committed legal error in assigning weight to the various pieces of opinion evidence in the record. (ECF No. 23-2, at 2-9.) Citing the "treating physician rule," she claims that it was error for the ALJ to assign "little weight" to the opinions of Ajin Mathew, a physician's assistant at the Arthritis Center of Connecticut. (*Id.* at 2.) She also argues that the Appeals Council erred when it "ignored" the letter from PA Rizza. (*Id.*) And she contends that it was error for the ALJ to assign "great weight to the . . . nonexamining state agency medical expert, Dr. Virigina [*sic*] Rittner." (*Id.*) For the reasons that follow, the Court disagrees.

### 1.    PA Mathew

The administrative record included three statements of opinion from PA Mathew. In the first, he responded to a disability questionnaire from Plaintiff's counsel by opining (among other things) that the Plaintiff could sit for only two hours in a workday; could "stand/walk" for only two hours; and would require unscheduled breaks and rest periods of at least ten minutes every hour in a workday. (R. 690-94.) In the second, he responded to a fibromyalgia-specific questionnaire from counsel, checking a series of "yes/no" checkboxes. (R. 695-698.) And in the third, he commented upon the Plaintiff's fibromyalgia in the course of responding to a Department of Social Services questionnaire that principally concerned her mental health. (R. 736-742.) The ALJ assigned "little weight" to PA Mathew's statements of opinion (R. 35), and the Plaintiff argues that he breached the treating physician rule in doing so. (ECF No. 23-2, at 2-3.)

For claims that – like the Plaintiff's – were filed before March 27, 2017, ALJs were required to follow the treating physician rule set forth in 20 C.F.R. §§ 404.1527 and 416.927. (ECF No. 23-2, at 4.)   Under that rule, SSA claim adjudicators were instructed to afford "controlling weight" to a "medical opinion" from a "treating source" "on the issue(s) of the nature and severity of [a claimant's] impairments," provided that the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If the ALJ afforded less-than-controlling weight to a "medical opinion" from a "treating source," he was required to explain his reasons for doing so in his written decision.  *See id.* ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  In the Second Circuit, that explanation ordinarily required documentation of his explicit consideration of four specific factors, often called the "*Burgess* factors" after the case in which they were enumerated.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *see also Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (holding that ALJ's decision to afford less-than-controlling weight to an opinion from claimant's treating physician should reflect consideration of the length of the treatment relationship and the frequency of examination; the amount of medical evidence supporting the opinion; its consistency with the remaining evidence; and the physician's specialty, if any); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (describing factors to be addressed when evaluating "medical opinion[s]" from "treating source[s]").

But these rules did not apply to the opinions of a physician's *assistant*.  To be entitled to controlling weight under the then-existing regulations, an opinion had to be a "medical opinion" from a "treating source."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  And under the regulations' definitions of those terms, to qualify as a "medical opinion" from a "treating source," the opinion

had to come from an "*acceptable* medical source." 20 C.F.R. §§ 404.1527(a), 416.927(a) (emphasis added).  At the times relevant to the Plaintiff's claim, another regulation defined "acceptable medical source" to include "[l]icensed physicians" but not physician's assistants.  20 C.F.R. §§ 404.1513(a), 416.913(a) (effective Sept. 3, 2013 – March 26, 2017); *see also* Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.") (rescinded effective March 27, 2017).  As the Second Circuit has explained, "while the ALJ is certainly free to consider" the opinions of a physician's assistant "in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."  *Grenier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008) (summary order).

Of course, this does not mean that the ALJ could disregard the opinions of a physician's assistant without explaining himself in any way.  The regulations provided that, when the record contained "[o]pinions from medical sources who are not acceptable medical sources," "[t]he adjudicator generally should explain the weight given to [these] opinions."  20 C.F.R. §§ 404.1527(f), 416.927(f).  But no authority required the ALJ to explain the weight he assigned to a physician's assistant's opinion with the same level of detail required when assigning less-than-controlling weight to a physician's opinion, and indeed the Plaintiff does not cite any.  To the contrary, when assigning weight to "[o]pinions from medical sources who are not acceptable medical sources," the ALJ was required only to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  20 C.F.R. §§ 404.1527(f), 416.927(f).  In particular, he was not obliged to discuss all of the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) – the factors mirrored in *Burgess*

and *Estrella* – because "not every factor for weighing opinion evidence will apply" to every such opinion.  20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

The question, therefore, is whether ALJ Noel's discussion of the weight assigned to PA Mathew's opinions "allows" the Plaintiff or the Court "to follow [his] reasoning," and otherwise complies with 20 C.F.R. §§ 404.1527(f) and 416.927(f).  The Court concludes that it does.  To begin with, the ALJ recognized the length of the treating relationship.  (R. 35) (noting that PA Mathew had "treated the claimant since July 2016").  And he also considered PA Mathew's specialty.  (*See* R. 35-36) (noting that PA Mathew is a physician's assistant, and considering whether he had expertise to opine on alleged mental limitations).  Perhaps most importantly, the ALJ extensively set forth his reasons for concluding that PA Mathew's opinions were inconsistent with the other "medical evidence on record."  (R. 35.)

Citing four exhibits, the ALJ explained that the Plaintiff "often report[ed] being independent with activities of daily living . . . almost always has full range of motion, and has a normal gait."  (*Id.*)  He acknowledged PA Mathew's opinion that "lifting is limited to 10 pounds," but gave that opinion little weight because "the claimant has always ha[d] full strength and range of motion," and because a lifting limitation imposed by a physician "was only for a few weeks."  (*Id.*)  The ALJ also noted that PA Mathew had failed to explain the basis for many of his opinions, including his opinion about the degree to which the Plaintiff would be "off task" at work, and his opinion about the number of days she would have to miss each month.  (R. 36.)  The Plaintiff may disagree with these conclusions, but she cannot plausibly charge the ALJ with the legal error of not sufficiently explaining himself.  The Court concludes that, in explaining his reasons for assigning little weight to PA Mathew's opinions, the ALJ complied with his obligations under 20 C.F.R. §§ 404.1527(f) and 416.927(f).

2.      **PA Rizza**

The Plaintiff next argues that the Commissioner's decision is infected with legal error because the Appeals Council "ignored" the June 6, 2019 letter from PA Rizza.  (ECF No. 23-2, at 2; R.10.)  The Court disagrees, for several reasons.

First, the record does not reflect that the Appeals Counsel ignored the letter.  To the contrary, the Council specifically acknowledged the letter, and explained its reasons for not giving it the weight or effect that the Plaintiff sought.  (R. 2.)  In particular, the Council explained that the letter did "not relate to the period at issue" in the case, and therefore did "not affect the decision about whether [the Plaintiff] was disabled beginning on or before December 3, 2018."  (R. 2.)

Second, the Council's treatment of the letter was substantively correct because it was under no obligation to consider new evidence that had no demonstrated relationship to the claimed period of disability.  "The Appeals Council will review a case if . . . [it] receives additional evidence that is new, material, *and relates to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (emphasis added).  "New evidence is any evidence that has not been considered previously during the administrative process[,]" that is not cumulative.  *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010).  "Evidence is material if it is (i) *relevant to the time period for which benefits have been denied* and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently."  *Id.* (emphasis added).  In this case, PA Rizza's letter opined that the Plaintiff's "diseases make manual labor . . . difficult to accomplish," and that she is therefore "unable to work," but it said nothing about whether this was true before December 3,

2018.  (R. 10.)  It was therefore not "relevant to the time period for which benefits have been denied."  *McIntire*, 809 F. Supp. 2d at 21.

Third, the Plaintiff's claim that PA Rizza was a "treating source" is unsupported by the record.  The letter submitted to the Appeals Council consisted of four sentences addressed "To Whom It May Concern," and was dated June 6, 2019, over seven months after the ALJ's decision.  (R. 10.)  It stated that the Plaintiff had been a patient for over four years at the Arthritis Center and was "being treated for daily chronic pain resulting from diagnoses of Rheumatoid Arthritis, Fibromyalgia and Peripheral Neuropathy."  (*Id.*)  But PA Rizza did not claim that *she* treated the Plaintiff, nor is there any evidence in the record demonstrating that the Plaintiff ever saw her during the disability period under review.  The letter was not accompanied by any treatment records demonstrating a treating relationship.  "A treating [source] is one who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and . . . relationship with the individual."  *Dudley v. Berryhill*, No. 3:16-cv-00513 (SALM), 2018 WL 1255004, at *10 (D. Conn. Mar. 12, 2018) (citations and quotation marks omitted); *see also* 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").  Because PA Rizza had no demonstrated contact with the Plaintiff, it was not legal error for the Appeals Council to decline to give her letter the effect that the Plaintiff sought.  *See, e.g., Arnone v. Bowen,* 882 F.2d 34, 40-41 (2d Cir. 1989) (according no deference to a physician's opinion where there was no indication that the doctor ever saw the claimant during the claimed period of disability).

Fourth and finally, the Commissioner was not required to give any deference to PA Rizza's statement that the Plaintiff "is unable to work."  (R. 10.)  "Opinions on some issues . . . are not

medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(d), 416.1927(d). This class of opinions includes "[o]pinions that [a claimant is] disabled," because the Commissioner – and not the claimant's treatment provider – is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. §§ 404.1527(d)(1), 416.1927(d)(1). The Commissioner is not obliged to "give any special significance to the source of" such an opinion. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). "The final question of disability . . . is expressly reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999). In summary, the Appeals Council's treatment of PA Rizza's letter does not taint the Commissioner's decision with legal error.

### 3.    Non-Examining State Agency Consultants

The Plaintiff next challenges the ALJ's decision to give "great weight" to the opinion of a non-examining State agency physician, Dr. Virginia Rittner.[4] (ECF 23-2 at 5-6.) The Commissioner counters that the State agency physicians' opinions were "prefaced by a detailed medical summary," "supported by citation to the record," and could properly be given great weight by the ALJ without committing legal error. (ECF No. 26-1 at 11.) The Court agrees with the Commissioner.

"The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 416.927(e)(2)(i)). To

---

[4]    Dr. Anita Bennett provided an opinion on January 3, 2017 on the initial determination. (R. 92-121.) Dr. Virginia Rittner provided an opinion on September 18, 2017 on reconsideration. (R. 122-151.) The Plaintiff only addresses Dr. Rittner's opinion in her brief. (ECF No. 23-1 at 5-6). Dr. Rittner's opinion and RFC are substantially the same as Dr. Bennett's opinion and RFC.

be sure, "[c]ourts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." *Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566, at *7 (E.D.N.Y. Sept. 30, 2020). But as long as the opinions have proper support in the record, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Wilson v. Saul*, No. 3:18-cv-01097 (WWE), 2019 WL 2603221, at *11 (D. Conn. June 25, 2019).

The Plaintiff criticizes Dr. Rittner for relying in part on "field office observations" in reaching her opinions (ECF No. 23-2, at 5-6), but this fact alone is an insufficient basis for charging the ALJ with legal error. "SSA regulations expressly provide that 'observations by our employees and other persons' will be treated as evidence." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citing 20 C.F.R. § 416.929(c)(3)). While courts have roundly criticized ALJs for over-relying on their own observations of the claimant during administrative hearings, *see, e.g., Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981) (observing "serious questions with respect to the propriety of subjecting claimants to a 'sit and squirm index'"), in this case the ALJ did not rely on his own lay observations. Rather, he assigned great weight to an agency expert's opinion that, in turn, relied in part on "observations by [the SSA's] employees," because he regarded it as "consistent with the record as a whole, including later adduced evidence and hearing testimony." (R. 36.) Put differently, he did not give dispositive effect to his own observations of the Plaintiff, as ALJs have sometimes done; instead, he gave weight to an expert report that used observation as but one of its many data points. The Plaintiff points to no authority for the proposition that this was legal error; *Dorsey v. Saul*, cited in her brief (ECF No. 23-2, at 6), stands only for the

proposition that it may be erroneous for an ALJ to give dispositive weight to his own inexpert observations.  No. 18-cv-01964 (VLB), 2020 WL 1307107, at *8 (D. Conn. Mar. 19, 2020).

The Plaintiff also criticizes Dr. Rittner's opinion as "obviously inconsistent with the record" (ECF No. 23-2, at 6), but under the facts of this case, the ALJ was within his rights to disagree.  The Plaintiff says, for example, that the record consistently showed "an antalgic gait" (*id.* at 9), but in assessing whether Dr. Rittner's opinion was consistent with the record, the ALJ cited "numerous records documenting a normal gait."  (R. 36) (citing Exs. 21F, 23F, 24F, and 37F).  The Plaintiff also says that her "records consistently show intense fatigue" (ECF No. 23-2, at 9), but the ALJ reasonably could have concluded from the record that her fatigue was not "intense" – and, by extension, could reasonably credit an expert report that did not consider "intense" fatigue in evaluating the Plaintiff's functional limitations.  The cited records describe a Plaintiff who is consistently tired, but the ALJ could reasonably have regarded them as not describing intense or disabling fatigue.  (*See* R. 2681-83 ("feels tired during the day"); R. 737 ("variable myalgias with fatigue"); R. 856 ("continued fatigue"); R. 508 ("continued fatigue"); R. 691 (checking box on Plaintiff's counsel's questionnaire for "chronic fatigue").)  The Plaintiff also argues that Dr. Rittner's report is inconsistent with the physical therapy records – which, she claims, "document walking difficulty due to back, neck, leg, foot pain due to diabetic peripheral neuropathy and plantar fasciitis."  (ECF No. 23-2, at 7) (citing Peak Physical Therapy records at R. 551-556).  But those records are from January 2016 (R. 551), and many subsequent records document the Plaintiff walking with a normal gait and without the aid of a cane.  (*See, e.g.,* R. 1154 (Aug. 10, 2017 hospital record documenting "[n]o orthopedic devices," "[f]ull range of motion"); R. 840 (Dec. 12, 2016 treatment note from PA Mathew, documenting "[n]ormal" gait).)

In sum, the ALJ did not commit legal error in assigning weight to Dr. Rittner's opinion, nor to any of the other items of opinion evidence in this case.

### B.    Evaluation of Fibromyalgia

The Plaintiff next claims that the ALJ erred in his evaluation of her fibromyalgia.  (ECF No. 23-2, at 10-13.)  Noting that "the symptoms of fibromyalgia can wax and wane so that a person may have bad days and good days," she says that it was error for the ALJ to "focus[] on short-lived periods of partial improvement" in concluding that she was not disabled.  (*Id.* at 10 (quoting Soc. Sec. Ruling 12-2p) (quotation marks omitted).)  She further argues that, because fibromyalgia is the sort of disease that can "elude[]" objective measurement, the ALJ erred when he discounted her "allegations regarding the intensity, persistence, and limiting effects of her fibromyalgia symptoms by relying primarily on 'normal' objective evidence, such as normal range of motion." (*Id.*) (quoting *Ortiz v. Colvin*, No. 3:13-cv-00610 (JGM), 2014 WL 819960, at *12 (D. Conn. Mar. 3, 2014)).  For the reasons that follow, the Court disagrees.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *2 (SSA July 25, 2012) (hereinafter "Ruling 12-2p"). As the Plaintiff correctly notes, its "symptoms are subjective and therefore elude objective measurement."  *Ortiz*, 2014 WL 819960, at *12 (citing *Montanez v. Astrue*, No. 3:07-cv-01039 (MRK) (WIG), 2008 WL 3891961, at *17 (D. Conn. Aug. 1, 2008)).  And as the Second Circuit has observed, "there are no objective tests which can conclusively confirm the disease."  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)).  "[P]hysical examinations will usually yield normal results."  *Id.*

The SSA has provided guidance to ALJs on how to evaluate disability claims arising out of this unique disease.  Ruling 12-2p.  The process begins by considering whether the claimant's fibromyalgia constitutes a medically determinable impairment, or "MDI."  *Id.* at *2.  The SSA "will find that a person has an MDI of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence" listed elsewhere in the guidance, "and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."  *Id.*  If the SSA concludes that the claimant's fibromyalgia constitutes an MDI, the analysis proceeds to a second step, at which the agency "evaluate[s] the intensity and persistence of the person's pain or any other symptoms and determine[s] the extent to which the symptoms limit the person's capacity for work."  *Id.* at *5.  "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the agency "consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."  *Id.*

Thus, to the extent that the Plaintiff is suggesting that there is little or no role for objective medical evidence in evaluating fibromyalgia-based disability claims, she is mistaken.  "[I]f the objective medical evidence is inconsistent with plaintiff's testimony regarding her functional limitations, the ALJ will 'consider *all* of the evidence in the case record'" – the objective and the subjective alike.  *Christine M.R. v. Saul*, No. 3:19-cv-01752 (SALM), 2021 WL 129415, at *18 (D. Conn. Jan. 14, 2021) (emphasis added) (citing *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-cv-00271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020)).  In particular, an ALJ may properly consider objective medical evidence of the range of motion in a claimant's joints.  *See*

Ruling 12-2p, at *5 (authorizing ALJs to consider "objective evidence"); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (defining "objective medical evidence" to include "evidence of reduced joint motion").  He may also consider the degree to which "medications . . . alleviate the symptoms," and he may likewise consider "the person's daily activities."  Ruling 12-2p, at *5.[5]

The question, therefore, is whether the ALJ considered *all* of the evidence in the record – the objective and the subjective alike – and otherwise complied with Ruling 12-2p.  *Christine M.R.*, 2021 WL 129415, at *19 ("[T]he pertinent question before the Court is whether the ALJ adhered to SSR 12-2p in evaluating plaintiff's fibromyalgia.").  The Court concludes that he did.  First, the ALJ found that the Plaintiff's fibromyalgia is a severe impairment.  (R. 26.)  He next considered the objective evidence, and concluded that it fell "far short of demonstrating the existence of limitations that are of such severity as to preclude the claimant from performing any work on a regular and continuing basis."  (R. 37.)  Having reached this conclusion, Ruling 12-2p then obliged him to consider all of the evidence in the record, including "the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms," and so

---

[5]     The cases cited by the Plaintiff are not to the contrary.  *Green-Younger*, for example, concerned whether an ALJ erred by "not actually credit[ing the treating physician's] diagnosis of fibromyalgia or misunderstood its nature."  335 F.3d at 108.  Here, by contrast, the ALJ credited the diagnosis and determined that the Plaintiff's fibromyalgia *was* a severe impairment.  (R. 26); *see also Christine M.R.*, 2021 WL 129415 at *19.  Her other citations involve similarly inapposite scenarios.  *Ortiz*, 2014 WL 819960, at *12-13 (discussing whether ALJ erred by insisting on objective evidence in determining whether to afford controlling weight to a treating physician's opinion); *Poudrier v. Berryhill*, No. 3:18-cv-01384 (MPS), 2020 WL 1080446, at *3 (D. Conn. Mar. 6, 2020) (same); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 309 (D. Conn. 2010) (same).

Moreover, "the 2003 decision in *Green-Younger* predates SSR 12-2p, which was issued in 2012."  *Christine M.R.*, 2021 WL 129415, at *19.  "Indeed, SSR 12-2p appears to respond to, and address, the concerns raised by the Court in *Green-Younger* about the inherent difficulties that arise when evaluating fibromyalgia."  *Id.*  Ruling 12-2p instructs ALJs to "look beyond the objective medical evidence and 'consider all of the evidence in the case record.'"  *Id.* (quoting Ruling 12-2p).

forth.  Ruling 12-2p, at *5.  The ALJ considered the Plaintiff's daily activities when he noted that, among other things, she could "wash laundry, cook, and clean" (R. 28); was "independent with activities of daily living" (R. 30); and walked without a cane.  (R. 37.)  He considered the degree to which the Plaintiff's symptoms were alleviated by medication when he cited medical records confirming that her "medication, including Gabapentin, worked to reduce her pain and stiffness, particularly in the morning."  (*Id.*)  In short, he did what the ALJ in *Christine M.R.* did – he "followed the steps set forth in" Ruling 12-2p by "properly consider[ing] *more* than just the objective evidence."  2021 WL 129415, at *20.  Here, as in that case, "[t]he ALJ committed no error."  *Id.*

### C.   The Plaintiff's Bilateral Upper Extremity Impairment, and Other Challenges to the Substantiality of the Evidence

The Plaintiff next argues that the ALJ overlooked evidence that she was unable to grasp, reach and handle on a sustained basis.  (ECF. No.23-2, at 13-14.)  The Commissioner does not dispute that the Plaintiff had osteoarthritis, and that this condition produced related symptoms. (ECF No. 26-1, at 6.)  Indeed, the ALJ specifically found that the Plaintiff's impairments limited her ability to do basic work activities, and for this reason, he included fingering and reaching limitations in the RFC.  (Tr. 27.)  The ALJ properly addressed the objective medical evidence, which showed benign to moderate findings and did not support the Plaintiff's allegations of a disabling upper extremity impairment.  (R. 29-32, 35-36.)

In particular, substantial evidence supported his conclusion that the Plaintiff's shoulder complaints were not disabling.  While she alleges shoulder pain (R. 58, 65, 514, 580), X-rays from July 28, 2016, showed minimal degenerative changes and no significant arthrophy.  (R. 830.) Consistent with the minimal X-ray findings, treatment notes from February 21, 2017, showed normal upper bilateral extremity strength and intact sensation.  (R. 621.)  PA Mathew's

examination notes recorded some "tenderness" and "moderate" pain in the shoulders on a few occasions, but do not generally support a finding of significant limitation. (*See* R. 516 (7/26/16-right shoulder tenderness with moderate pain with motion), 780 (3/28/17-trigger point injection administered to trapezius), 776 (3/29/17-noting tenderness to right shoulder), 777 (3/29/17-cortisone shot administered to right shoulder).)

Substantial evidence also supports the ALJ's conclusions regarding the Plaintiff's hands. The ALJ explicitly considered the Plaintiff's treatment for a trigger finger, but concluded that the records did not support a finding of significant limitation. (R. 35.) Many of the associated records predated the Plaintiff's alleged disability onset date by years, and overlapped with the time she worked as an assembler. (*E.g.,* R. 300, 478 (May 2010), 482 (April 2010).) They therefore do not support her claim that her hand and fingering impairments preclude her from working. Moreover, her physical therapy records could reasonably be regarded as failing to support a significant limitation. While her initial physical therapy evaluation noted her subjective reports of "weakness and loss of control of her left fourth and fifth fingers" (R. 551), later reports say little or nothing about her left hand or grip strength. (*E.g.*, R. 867.) The Plaintiff was seen for physical therapy in March and October 2017, when she did not complain about issues to her hands, grasping, fingering or issues with her upper extremities. (*See* R. 2828-40 and 2819-20, 2838.) X-rays of her hands from July 28, 2016, showed no significant arthropathy. (R. 831-32.) PA Mathew's post-April 2017 treatment notes reflect that the Plaintiff presented with "no tenderness, swelling or effusion, or limitation to range of motion" to her hands. (R. 769 (5/2/2017), 765 (10/16/17), 761 (11/28/2017), 757 (12/5/17).) Treatment records from Waterbury Hospital containing physical examination of the Plaintiff's musculoskeletal system consistently document normal range of motion, normal strength, no tenderness, no swelling and no deformity. (*See, e.g.,* R. 1159

(8/10/17); 1228 (9/6/17), 1233 (9/5/17), 1259 (12/14/17).)  Urgent care records from February 21,

2017, reflect findings of full motor strength to the bilateral upper extremities and intact sensation

to light touch.  (R. 621.)

To be sure, there was contrary evidence in the record as well, as the Plaintiff details in her

brief.  (ECF No. 23-1, at 13-16.)  But "[i]t is not the function of this Court to re-weigh evidence

or consider *de novo* whether [a claimant] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc.

Sec.*, No. 1:19-cv-01523 (EAW), 2021 WL 707744, at *3 (W.D.N.Y. Feb. 24, 2021).  Rather,

"[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by

substantial evidence, even if the Court might have ruled differently had it considered the matter in

the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020).  Stated differently,

"[e]ven where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are

supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting

*Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).  The above-cited facts provide substantial

evidentiary support for the ALJ's conclusions about the Plaintiff's upper extremity limitations, and

accordingly the Court will not disturb those conclusions.

The Plaintiff also challenges the substantiality of the evidence supporting other conclusions

reached by the ALJ, including conclusions regarding her diabetic neuropathy and her ability to

stand and walk for long periods of time (*e.g.*, ECF No. 23-1, at 7), but the Court will not disturb

those conclusions either.  Although the Plaintiff testified that she had difficulty walking because

her hands and feet fall asleep, the record demonstrates frequent asymptomatic findings from a

number of different treatment providers.  In treatment records with PA Mathew, the Plaintiff

generally denied numbness to her extremities.  (*See, e.g.,* R. 509, 512, 515, 589).  Neurological

examinations also showed normal sensation.  (*See e.g.,* R. 578, 586, 589, 670, 753 757.)  She reported improvement in her peripheral neuropathy with Gabapentin.  (R. 502, 505.)  Despite notations of antalgic gait (*e.g.,* R. 516, 749, 757, 761, 765, 769, 773, 776, 780, 784, 837), there are many instances in the record where PA Mathew noted that the Plaintiff presented with a normal gait.  (*E.g.,* R. 501, 504, 507, 510, 512, 840, 844.)

Other treatment providers likewise examined the Plaintiff and noted normal gait, strength, and sensation to the lower extremities.  For example, the Plaintiff denied numbness, tingling, and weakness at a visit to an urgent care center on February 21, 2017.  (R. 620.)  The center noted that her gait was normal, that she had full motor strength bilaterally to her lower extremities, and that she was able to walk on her heels and toes.  (R. 621.)  At Waterbury Hospital on August 10, 2017, the Plaintiff presented with no orthopedic devices, no joint or musculoskeletal abnormalities, and full range of motion.  (R. 1159.)  And during a 2018 hospital stay, nursing assessments consistently noted the same things.  (*E.g.,* R. 1989, 2015, 2542, 2547.)  The ALJ's conclusion that the Plaintiff could stand and walk consistently with a "light work" RFC was supported by substantial evidence and free from legal error, and accordingly the Court is constrained to affirm it.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (district courts are "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard").

### D.    The Plaintiff's Claims of Step Four and Step Five Error

Finally, the Plaintiff argues that the ALJ failed to meet his burdens "with respect to vocational testimony and the RFC."  (ECF No. 23-1, at 19-22.)  Her argument has two principal elements.  First, she says that the "light work" RFC was unsupported, because "[e]ven if only a fraction of the documented impairments shown by medical evidence and testimony were credited,

[she] would be unable to perform light work." (*Id.* at 19-20.) Under this heading, she reprises her arguments about the ALJ's treatment of the opinion evidence. (*Id.* at 20.) Second, she argues that the ALJ wrongly concluded at Step Five that she could work as a laundry worker, because although the VE testified otherwise, that job "require[s] frequent bilateral fingering and handling" that she cannot perform. (*Id.* at 21.) The Court does not find the first argument persuasive, and it does not reach the second.

The Court has already explained how the ALJ's treatment of the opinion evidence complied with applicable law (*see* discussion, Section III.A *supra*), and it will not repeat that discussion here. The Plaintiff goes on to note that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds," and also requires either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." (ECF No. 23-2, at 19 (citing 20 C.F.R. § 404.1567).) She correctly adds that, "[t]o be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities." (*Id.*) But she does not plausibly explain how the record lacked substantial evidence of such an ability. She testified at the hearing that she could lift ten pounds (R. 59), and even PA Mathew said that she could sometimes lift twenty. (R. 692.) And the substantiality of the evidence regarding her ability to walk has been discussed above.

The Plaintiff's second argument is a Step Five argument, and accordingly it need only be reached if her claim passes Step Four. "The sequential evaluation process is a series of five 'steps' that [the SSA] follow[s] in a set order." 20 C.F.R. §§ 404.1520(a), 416.920(a). If the agency determines that a claimant is "disabled or not disabled at a step," it makes its "determination or decision" at that step and does "not go on to the next step." *Id.*; *cf. also Tankisi v. Comm'r of Soc.*

*Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013) (summary order) ("The burden is with [the claimant] to show that she lacks the functional capacity to perform her past employment responsibilities.").  In *Quezada v. Barnhart*, for example, the court observed that "[b]ecause Quezada did not meet his burden of proof on the fourth step of the analysis, the Court is not required to advance to the fifth step."  No. 06-Civ.-2870 (DAB) (AJP), 2007 WL 1723615, at *13 (S.D.N.Y. June 15, 2007) (citing 20 C.F.R. § 404.1520(a)(4)).

In this case, substantial evidence supported stopping at Step Four.  The Plaintiff testified to past relevant work as an electronics assembler.  (R. 55-56.)  The VE testified that that job could be performed by someone who could "only frequently finger with the left hand" (R. 74), and ALJs may properly rely on this sort of testimony when assessing the claimant's ability to do past relevant work at Step Four.  *See Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 127 (2d Cir. 2016) (summary order) (holding that "the opinions of . . . the vocational expert . . . supported the ALJ's conclusion that Heagney-O'Hara could perform light work in a seated position with frequent but not constant fingering").  And the ALJ's factual finding that the Plaintiff's RFC required only a "limit[ation] to frequent fingering with the left hand" was supported by substantial evidence for the reasons discussed in Section III. C above.[6]  Because it was proper to stop at Step Four under the facts of this case, the Court does not reach the Plaintiff's Step Five arguments.

---

[6]     The ALJ also concluded that the Plaintiff could perform her past relevant work as a data entry clerk.  (R. 38.)  This conclusion lacked substantial evidentiary support, because the VE testified that that job could not be performed by someone who was limited to "frequent fingering of the left hand."  (R. 76.)  But this was a harmless error.  So long as a claimant can perform at least one job included in her past relevant work, an ALJ's erroneous finding that she can perform others is harmless.  *Cichocki v. Astrue*, 534 F. App'x 71, 77 n.1 (2d Cir. 2013) (summary order).

**IV.    CONCLUSION**

For the reasons stated above, the Court concludes that the ALJ's decision was supported by substantial evidence and free from legal error.  Therefore, the Plaintiff's Motion for Order reversing or remanding the Commissioner's decision (ECF No. 23) is **DENIED**.  The Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 26) is **GRANTED**.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 10.)  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendant, and to close this case.

So ordered this 24th day of September, 2021, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge